IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2004 Session

**ALBERT THOMPSON**

**v.**

**JOHNNY W. SANDERS, MELINDA THOMPSON, GAYLE SANDERS,**
INDIVIDUALLY AND AS TRUSTEE OF THE MELINDA AND CHILDREN TRUST, EZ
**CASH I, LLC, EZ CASH II, LLC, EZ CASH III, LLC,**
**EZ CASH IV, LLC,** AND **EZ CASH V, LLC**

**An Appeal from the Circuit Court for Shelby County**
**No. 303613-2    James F. Russell, Judge**

_____

**No. W2003-00139-COA-R3-CV - Filed June 10, 2004**

_____

The issue in this case is whether we have subject matter jurisdiction over this appeal. The plaintiff sued the defendants for, among other things, breach of contract, fraud, and intentional infliction of emotional distress. On July 15, 2002, the trial court entered an order granting summary judgment in favor of the defendants. Thirty-two (32) days later, on August 16, 2002, the plaintiff filed a motion to alter or amend the judgment. The trial court denied the motion to alter or amend, and the plaintiff now appeals. This Court, *sua sponte*, asked the parties for supplemental briefs regarding whether the appeal was timely. In light of the undisputed facts, we must hold that the plaintiff's motion to alter or amend was untimely and, consequently, that the plaintiff's notice of appeal was untimely. Therefore, we must dismiss this appeal for lack of subject matter jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed for Lack of Jurisdiction**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Warner Hodges, III, Germantown, Tennessee, for the appellant, Albert Thompson.

G. Coble Caperton, Memphis, Tennessee, for the appellees, Johnny W. Sanders, Melinda Thompson, Gayle Sanders, individually and as trustee of the Melinda and Children Trust, EZ Cash I, LLC, EZ Cash II, LLC, EZ Cash III, LLC, EZ Cash IV, LLC, and EZ Cash V, LLC.

**OPINION**

Plaintiff/Appellant Albert Thompson ("Husband") married Defendant/Appellant Melinda Thompson ("Wife") in September 1995, when they were forty-two and thirty-five years old,

respectively. The other two individual Defendants/Appellees, Johnny W. Sanders ("Mr. Sanders") and Gayle Sanders ("Mrs. Sanders"), are Wife's parents.

From 1984 to 1992, Wife worked for Vollrath Group in Galloway, Tennessee. She began as a purchasing clerk and was later promoted to purchasing supervisor. From 1992 to 1997, Wife worked for A. E. Clevite, Inc. as a business systems analyst. During the parties' marriage, Husband worked as an assistant manager at a "Quick Cash" store which, at that time, was in the business of making short-term loans on automobile titles.

The events leading up to the filing of the complaint in this case are disputed by the parties. Wife claims that, during the summer of 1995, she became interested in the business concept behind Quick Cash. Wife claims that she visited Husband at the Quick Cash where he worked and observed the operation of the business. From her observation and research, Wife developed a business plan and prepared pro forma statements to determine the profitability of such a business. Wife asserts that she engaged in numerous conversations with her father, defendant Mr. Sanders, about owning a store similar to Quick Cash in partnership with him.

Husband asserts that it was he, not Wife, who came up with the idea of starting up a cash advance business similar to Quick Cash. Husband contends that he shared his idea with Wife and expressed a desire that he and Wife open a store of their own. Husband also claimed that he began looking for investors to put up the necessary capital for the business. Husband maintains that Wife never observed the operation at Quick Cash nor did she work in the business. Husband claims that Wife urged him to speak with Mr. Sanders, her father, about becoming a partner with them because Mr. Sanders could provide the capital. Husband contended that he obtained all the necessary paperwork for obtaining a loan from Quick Cash and that he shared the documents with Wife and Mr. Sanders.

Husband claims that, in December 1995, he participated in a meeting with Wife and Mr. Sanders at which Mr. Sanders offered to invest 100% of the money to buy an "EZ Cash" (a business similar to Quick Cash) if Husband and Wife would run the business. Husband alleges that Mr. Sanders agreed that Husband and Wife together would own half of the business, and that Mr. Sanders would own the other half. Husband claims that he "trusted and relied upon the statements of [Mr. Sanders] and [Wife] concerning our partnership interest in the business and did not require formal paperwork." Mr. Sanders' proposal, Husband claims, prevented Husband from continuing to seek out suitable co-investors. Wife, on the other hand, says that she alone met with Mr. Sanders about the business proposition, and that Husband was uninvolved and was just "standing in the doorway" during her discussion with Mr. Sanders. She denies that there was any agreement between Mr. Sanders and Husband.

In April 1996, Mr. Sanders opened the first EZ Cash store, EZ Cash I, and paid 100% of the business start-up capital. Wife claims that she helped out at the store on occasion, and that Husband worked at the store on Wednesdays when he was off work at Quick Cash. In November 1996, Mr. Sanders opened a second EZ Cash store, EZ Cash II, again entirely with his own money. He hired

full-time help to work at both EZ Cash I and EZ Cash II. In 1997, Mr. Sanders purchased three more stores, all with individual partners. Each partner in the three additional stores contributed 50% of the capital and Mr. Sanders contributed the other 50%. In 1997, Mr. Sanders met with an attorney, who created limited liability corporations for each of the five EZ Cash businesses. Husband claimed that the limited liability corporations were formed "surreptitiously" and without his knowledge.

In December 1997, Wife quit her job at A. E. Clevite to help Mr. Sanders with the EZ Cash businesses. She asserts that she ran all of the operations and the bookkeeping. Eventually, Husband quit working at Quick Cash to work full-time for the EZ Cash stores. Husband was paid a salary for his work at EZ Cash.

Also during 1997, the relationship between Husband and Wife became strained. Mr. Sanders became concerned that Husband wanted an ownership interest in the EZ Cash businesses. Therefore, during 1997, in order to transfer an interest in the EZ Cash businesses to Wife and her children (from a previous marriage), but not to Husband, Mr. Sanders created a trust called the Melinda and Children Trust. Mrs. Sanders was named as Trustee.

In early 1998, the tension between Husband and Wife escalated. In January 1998, Husband, believing that he had an ownership interest in the EZ Cash stores, retained a lawyer and had the lawyer draft a contract setting forth the nature of Husband's interest in the EZ Cash businesses. Husband presented the contract to Mr. Sanders, but Mr. Sanders refused to sign it.

On July 14, 1998, Wife filed a petition for divorce from Husband. Shortly thereafter, she fired Husband from EZ Cash for taking money from the drawer and from bank deposits without permission, and because he refused to fill in for an absent employee.

On April 9, 1999, the parties' final decree of divorce was entered. Paragraph 5 of the final divorce decree states:

> Wife currently is the beneficiary of a trust which has an ownership interest in several limited liability companies. Husband waives any claim he may have in and to the trust or those limited liability companies as a result of his marriage to Wife.

On August 6, 1999, Husband filed the complaint in the instant lawsuit entitled "Complaint for Accounting, Constructive Trust, Declaratory Judgment, Specific Performance, and Damages Resulting From Fraud," naming as defendants Wife, Mr. Sanders, Mrs. Sanders, and each of the five EZ Cash stores (collectively, "defendants").[1] On October 13, 1999, Husband amended his complaint

---

[1]Also in August 1999, Husband filed in the divorce court a motion for relief from the April 1999 final decree of divorce pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. The Rule 60.02 motion was later dismissed.

to add claims of intentional infliction of mental and emotional anguish, malicious and tortious interference with Husband's business and business prospects, and deliberate failure to pay divorce obligations. Husband alleged that Mr. Sanders had promised him a 50% share in the EZ Cash businesses, but that Mr. Sanders acted in collusion with Wife and Mrs. Sanders to defraud Husband by using his knowledge and expertise to start the EZ Cash business and then cut him out of the deal. Husband sought damages and a declaratory judgment that he and Wife, prior to his divorce, owned 50% of each of the five EZ Cash businesses.

On May 11, 2001, the defendants filed a motion for summary judgment. On June 28, 2002, the trial court held a hearing on the summary judgment motion. On July 15, 2002, the trial court entered an order granting the defendants' motion for summary judgment and concluding, among other things, that Husband was not permitted to raise his claims in the independent action, but that he could have and should have pursued his claims in the divorce case or in post-divorce proceedings in that court.

Thirty-two days later, on August 16, 2002, Husband filed a motion to alter or amend or for a new trial, pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. On November 22, 2002, the trial court held a hearing on the motion to alter or amend. Although the defendants objected to the timeliness of the Rule 59 motion to alter or amend, the trial court indicated that it was "not concerned about that." On December 11, 2002, the trial court entered an order denying Husband's motion to alter or amend. From that order, Husband now appeals.

On appeal, Husband makes several arguments regarding the propriety of the trial court's grant of summary judgment in favor of the defendants. As a threshold issue, however, we must determine whether we have subject matter jurisdiction to hear Husband's appeal. Even if the parties do not raise the issue,[2] the Court has a duty to satisfy itself that it has subject matter jurisdiction over the appeal. *See Carson v. Daimlerchrysler Corp.*, No. W2001-03088-COA-R3-CV, 2003 WL 1618076, at *2 (Tenn. Ct. App. March 19, 2003); *Seeber v. Seeber*, No. 03A01-9508-CV-00290, 1996 WL 165092, at *4 (Tenn. Ct. App. Apr. 10, 1996); Tenn. R. App. P. 13(b).

Pursuant to Rule 4 of the Tennessee Rules of Appellate Procedure, a party seeking to appeal a trial court decision must file his notice of appeal within thirty days after the date of entry of the judgment from which the appeal is taken. Tenn. R. App. P. 4(a). In civil cases, this thirty-day time limitation is jurisdictional. *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003). The time limitation can be tolled by the *timely* filing of a motion to alter or amend brought pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. Under Rule 59.04, a motion to alter or amend a judgment is timely if it is "filed and served within thirty (30) days after the *entry of the judgment*." Tenn. R. Civ. P. 59.04 (emphasis added). The time at which the judgment is "entered" is described in Rule 58 of the Tennessee Rules of Civil Procedure, which provides:

---

[2]The defendants objected to the timeliness of Husband's Rule 59 motion to alter or amend in the trial court, but did not raise the issue on appeal. As we have stated, however, this Court has the duty to raise issues involving subject matter jurisdiction *sua sponte*, and such matters cannot be waived. Tenn. R. App. P. 13(b).

> Entry of a judgment or an order of final disposition is effective *when a judgment containing one of the following is marked on the face by the clerk as filed for entry*:
>
> > (1) the signatures of the judge and all parties or counsel, or
>
> > (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
>
> > (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.
>
> When requested by counsel or pro se parties, the clerk shall mail or deliver a copy of the entered judgment to all parties or counsel within five days after entry; notwithstanding any rule of civil or appellate procedure to the contrary, time periods for post-trial motions or a notice of appeal shall not begin to run until the date of such requested mailing or delivery. In the event the residence of a party is unknown and cannot be ascertained upon diligent inquiry, the certificate of service shall so state. Following entry of judgment, the clerk shall make appropriate docket notations and shall copy the judgment on the minutes, but failure to do so will not affect validity of the entry of judgment.

Tenn. R. Civ. P. 58 (emphasis added). Thus, when a signed judgment "is marked on the face by the clerk as filed for entry," the date of the clerk's marking is the effective date of the "entry of the judgment" for purposes of Rule 59.04.

In the instant case, the record on appeal reflects that the order from which Husband appeals – the order granting the defendants' motion for summary judgment – was signed by the trial court and the parties and was stamped filed by the clerk of the court on July 15, 2002. The order was entered on the trial court minutes of July 15, 2002. Under Rules 58 and 59.04, Husband had thirty days from that date in which to file either a notice of appeal under Rule 4, or a Rule 59 motion to alter or amend in order to toll the commencement of the Rule 4 thirty-day time limitation. It is undisputed that Husband filed his motion to alter or amend on August 16, 2002, thirty-two days after the final order was entered.

In a supplemental brief submitted to this Court, Husband argued that the order granting summary judgment should be considered not actually entered until July 17, 2002, which would make the Rule 59 motion timely. In an affidavit by Husband's counsel submitted with the supplemental brief, Husband's counsel states that the attested copy of the signed order received by Husband's counsel did not contain on it a stamp from the clerk of the trial court. Without more information

appearing on the face of the order, counsel for Husband called the office of the trial court clerk and asked an employee when the order in question was entered. Husband's counsel was told over the telephone that it was entered on July 17, 2002. After this, counsel for Husband states, he went to the office of the trial court clerk and checked the document books, finding that the date of entry on the docket book was indeed July 17, 2002. Under these circumstances, Husband argues, the entry date of the trial court's final order should be considered to be July 17, 2002, and, therefore, his motion to alter or amend filed on August 16, 2002, should be considered timely.

On the undisputed facts of this case, we have no choice but to apply the plain language of Rule 58 as written and hold that the trial court order granting summary judgment to the defendants was effective when the order was "marked on the face by the clerk as filed for entry," that is, on July 15, 2002. Tenn. R. Civ. P. 58; *see Binkley*, 117 S.W.3d at 255-56. We assume *arguendo* that counsel for Husband reasonably relied on the representations of the trial court clerk and on the notation in the docket book, which erroneously showed that the order was entered on July 17, 2002. Under Rule 58, however, the date of entry reflected on the docket book is irrelevant for purposes of determining when the order is effective.[3] Husband has the burden of showing that his Rule 59 motion was timely filed. *See Binkley*, 117 S.W.3d at 258. On these facts, we must reluctantly conclude that he has not carried that burden.

This appeal is dismissed for lack of appellate subject matter jurisdiction. Costs are taxed to the Appellant, Albert Thompson, and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE

---

[3]The defendant points out that "[t]he handwritten docket books are being gradually phased out as total computer automation is being phased in. The computerized docket entry shows that the order was entered on July 15, 2002." Regardless of whether the handwritten or computerized docket book date would prevail, the date of entry reflected on either docket book is not relevant in determining the effective date of a final order under the plain language of Rule 58.